## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

UNITED STATES OF AMERICA,

                                    CASE NO.: 6:09-cr-0014-Orl-KRS

               Plaintiff,

vs.

JIMMIE L. THORPE,
a/k/a Jim Thorpe

               Defendant.

_____/

## DEFENDANT JIMMIE L. THORPE'S SENTENCING MEMORANDUM

COMES NOW the Defendant Jimmie L. Thorpe, by and through his undersigned attorney and files this sentencing memorandum for the court's consideration in determining the appropriate sentence to impose upon Mr. Thorpe.

This memorandum will amplify for the court the three factors recognized in the Presentence Investigation report that may warrant a sentence outside the Advisory Guideline System (PSR p. 11) and will consider relevant factors under title 18 U.S.C. § 3553(a).

## I.    INTRODUCTION

It is well established that the district court should begin by correctly calculating the Guidelines range, then give both parties an opportunity to argue for what they deem to be an appropriate sentence, and consider all of the factors set forth in 18 U.S.C. § 3553(a).  The court must not presume that the Guidelines range is reasonable, but make an individualized assessment based on the facts presented.  *Gall v. United States*, 552 U.S. 38 (2007).

In determining the sentence to be imposed, title 18 U.S.C. § 3553(a) sets forth the factors to be considered in imposing a sentence that is sufficient but not greater than necessary. Although each factor should be considered, a court need not account for every Section 3553(a) factor, nor must it discuss each factor or the role it played in sentencing. *United States v. McBride*, 511 F.3d 1293, 1297 (11th Cir. 2007).

## II.    BACKGROUND

This case arises out of charges of failure to timely file income tax returns and failure to timely pay income tax. On September 9, 2009, Mr. Thorpe entered a plea of guilty to two counts of willful failure to timely pay income tax. (Doc. 74), which the court accepted on September 22, 2009 (Doc. 79).

According to the Presentence Investigation Report, Mr. Thorpe's total offense level is 19. The report calculates the base offense level for failure to timely pay income tax at 22, evaluating the tax loss at $2,062,576.27. It then reduces the offense level by 3 for acceptance of responsibility.

## III.    GUIDELINES SENTENCE

Mr. Thorpe does not dispute the government's calculation of loss at $2,062,576.27. The Presentence Investigation Report accurately calculates the guidelines imprisonment range at 24 months. Rather, Mr. Thorpe submits that when all the factors of section 3553 are considered in light of Mr. Thorpe's history of three decades of community service, his age, his ability to pay the taxes, and the nature of the offense, a more appropriate sentence would be two months of incarceration followed by a term of two years supervised release or a probation period of five years and community service.

## IV.  PERSONAL HISTORY AND CHARACTERISTICS

2

Mr. Thorpe has been a professional golfer since 1972.  He competed in the Professional Golf Association (PGA) Tour until 1999, except two periods when he was injured.  The last injury caused him to be off the Tour from 1997 to 1998.  During his years on the PGA Tour, Mr. Thorpe was moderately successful, but his annual earnings were $350,000 or less.  With the expenses involved in professional golfing, Mr. Thorpe struggled financially and was supported by private investors known as sponsors.  Those private investors were entitled to and did require payment which included a share of Mr. Thorpe's winnings.

In 1999, Mr. Thorpe entered the PGA Seniors Tour, which is now known as the Champions Tour.  It was while on the Champions Tour that Mr. Thorpe's winnings and endorsements increased.

As a professional golfer, Mr. Thorpe was required to travel extensively, spending the vast majority of the year on the road attending PGA tournaments.  In spite of the demands of the Tour, Mr. Thorpe has continuously given to the community by his support of charities and programs that support underprivileged children, veterans, battered women, education, and other worthy causes. Mr. Thorpe's community service has been ongoing and not only in Central Florida, but throughout the country.  While traveling on the Tour, Mr. Thorpe gives his time and energy to support charitable groups that coordinate events in conjunction with the Tour schedules.

PGA Champions Tour give the players a platform to perform community service.  Many players do not contribute at all, require payment, or limit their commitment.  Mr. Thorpe has used the platform of professional golf throughout his career, to give back to the community.  As one of the first African Americans to become a professional golfer, Mr. Thorpe's career commenced while racial discrimination still existed.  In spite of enduring such discrimination, he never let that interfere with helping others.

3

Community Service

For over 30 years, Mr. Thorpe has donated considerable time and effort to a variety of charitable activities, including efforts to aid the elderly, and disabled veterans.  One of his primary concerns has been on helping children; in particular, helping disadvantaged children to recognize and believe that success in life is possible, and within their grasp.  Mr. Thorpe is personally well qualified to convey this message.  When he started on the PGA Tour, he endured considerable hardship himself.  He had to sleep in places like gas stations, because he couldn't afford a hotel.  Even when he could afford it, in the early days of his golfing career, many hotels and restaurants refused to accommodate an African American.

In order to understand the years of community service the following is a brief summary of some of the community service events and programs that Mr. Thorpe has participated in over the years.  Mr. Thorpe never charges for his participation and usually pays his own transportation and expenses.  To assist the court in evaluating Mr. Thorpe's years of community service, and the impact his service has had on others, two composite exhibits are submitted with this Sentencing Memorandum.  The first, a notebook, contains documents depicting Mr. Thorpe's contributions to various organizations.  Each tabbed, numbered section of the notebook contains materials about a different organization.  Mr. Thorpe's contributions to these organizations are described herein, and identified by numbered paragraphs corresponding to the numbered tabs in the notebook.  The second exhibit is a collection of letters of gratitude and support for Mr. Thorpe, either mailed to undersigned counsel or submitted to counsel's office via electronic mail.

1.  All Star Children's Foundation.

The All Star Children's Foundation was founded in 2005 as a local, grass-roots effort to help

4

prevent child abuse, neglect and abandonment.  Twice a year, the All-Star Children's Foundation hosts sports-related fundraisers.  These events draw a variety of celebrity supporters and are a major source of funding for the Foundation.  One of the events is an annual celebrity gala and golf classic, that typically begins on a Friday with a dinner and live auction, and the golf tournament is held the following day.  Mr. Thorpe played in the tournaments, and conducted golf clinics at the beginning of the tournaments. This event involves a two day commitment, and Mr. Thorpe has participated every year since 2005.

2.  Association of United States Army, certificate of appreciation.

A Vietnam veteran, Ed Daughtery, organized a golf clinic for disabled veterans.  Mr. Thorpe conducts a golf clinic, spending several hours with the veterans, teaching, socializing, signing autographs, passing out souvenirs, and having lunch.  The clinic is held at The American Lake Veterans' Golf Course in Lakewood, Washington.  Mr. Thorpe has participated in approximately 10 events at different sites every year, and has been doing so since 2004.

3.  The Jim Thorpe Boy Scout Classic.

Mr. Thorpe has been involved in this event for two years, as an organizer, as an administrator, and as a participant.  His principal duties are to coordinate where the tournament will take place, determine what prizes will be given, and teach the clinic.  He also plays in the tournament.  He attends at least three meetings per year, and attends lunches for Boy Scouts to make people aware of the clinic and to solicit participation by potential donors.

Mr. Thorpe donates some prizes himself, and contacts companies to solicit additional prizes. In exchange for the prizes he has solicited, Mr. Thorpe usually agrees to give a day to the donating company, doing an exhibition or clinic, having lunch, and playing a round of golf with employees

or management.

This event occurs once a year, and takes about a week of Mr. Thorpe's time. This particular event is very dependent on Mr. Thorpe; his participation and the use of his name greatly increases the number of participants and generates more money.

4. Boys and Girls Clubs.

Mr. Thorpe's connection with the Boys and Girls Clubs began 10 years ago, with the Boys and Girls Club of America. His contact is through the Washington organization, but he helps other groups. Mr. Thorpe has solicited donations of prizes, and donated prizes himself. When he solicits prizes from private companies, Mr. Thorpe usually agrees to give a day to the company, doing an exhibition or clinic, having lunch, and playing a round of golf with employees or management.

Mr. Thorpe has also donated his time, talking to children at the clubs, on a regular basis, all over the country.

In last two or three years some clubs have been forced to close, because business is so bad, many sponsors can no longer afford to support them. However, Mr. Thorpe continues to help the Boys and Girls Clubs.

In addition to the Greater Washington Chapter, Mr. Thorpe has participated in a tournament organized by Mr. Fuzzy Zoeller to benefit the Boys and Girls Clubs of New Jersey. The amount of time he gives varies each year, but averages about a week to ten days.

5. Rick Cahill "Thank You" letter.

Mr. Thorpe engages in personal acts of kindness and helpfulness, an example of which is memorialized in a letter from Mr. Rick Cahill of Fallbrook, California.

6. Cedar Grove Missionary Baptist Church.

This certificate is to recognize contributions Mr. Thorpe made in his home town, Roxboro, North Carolina, through this church. For six years, in the late 1980's and early 1990's, Mr. Thorpe contributed to the Youth Department, and did fundraising tournaments for the Youth Department, which used the funds for scholarships. Mr. Thorpe spent 7 days per year on the fundraising tournaments, resulting in contributions of between $ 1,400 and $5,000 per year. He also donated between $500 and $5,000 per year to this organization.

7. The Children's Home Society Orion Challenge.

The Children's Home Society in South Dakota is an organization that provides refuge for battered women and assists children in crisis. Most of these children have been the victims of extreme abuse and neglect. The Orion Challenge is a tournament to raise money to support the Society.

This is a two day event, and Mr. Thorpe has participated twice, in 2002 and 2003. In 2003, he played in the tournament with contributors, who bid for the opportunity to play with him. He raised $25,000 for this event; $15,000 donated by the group who played with him, and an additional $10,000 donated by the person who caddied for him. He also donated his own personal golf bag. Mr. Thorpe also spent time with the abused children. The specific goal of this event was to build a 50 room house for children who had been abused by their parents.

8. Crossings Community Church.

Mr. Thorpe and his wife donated the van depicted in the picture to the church youth group, at a cost of $16,000.

9. Golf4Youth, Inc.

Golf4Youth operates clinics for children, providing hands-on training. It also introduces the

children to the administrative side of golf, and the many career opportunities that are available other than as a professional player.  The organization also provides programs in the elementary schools, in which the professional golfers speak to the children about core values, and emphasize education, especially reading.  The organization donates books to the children, particularly dictionaries.  Mr. Thorpe's particular interest is in encouraging the children to pursue education, and to emphasize that one need not be an athletic superstar to succeed in a career associated with athletics.  Athletic organizations provide many employment opportunities in administration and other areas.  The PGA, for example, employs some 40,000 persons other than professional golfers.

Mr. Thorpe has been involved with Golf4Youth for three years.  Twice a year he teaches a one day golf clinic, "Jim Thorpe's Educational Golf Clinic," for this group.  He has also been a speaker in inner city schools and at other venues on many occasions.

Although Mr. Thorpe has a current and continuing relationship with Golf4Youth, Inc., he has participated in similar programs since at least 1980, regularly and frequently.  He is unable to document his exact participation, because so many different programs ask for help, and because he believes it is his duty to make a positive contribution.  Thus he donates his time whenever he is available, and does not keep a record of his service.

10.  Inner City Youth Golfers, Inc.

Mr. Thorpe serves on the board of directors of Inner City Youth Golfers, Inc., which consumes three to four weeks per year of his time.  The organization serves children from ages 7 through 18, but Mr. Thorpe's involvement has been focused on high school age children, who participate in the clinics based on educational achievement.  Mr. Thorpe also speaks to these young people, and donates awards, such as sets of golf clubs, to those with outstanding grades, who become

leaders in their school communities, and who contribute to their churches.

Mr. Thorpe got involved with the organization seven years ago. He does one or two of the teaching events every year, in addition to his administrative duties. His administrative duties include making sure the golf courses are set up for the events, planning the schedules for presentations, arranging transportation for the children, and coordinating pickup of the children after the events.

11. The David Maus Foundation.

The Foundation conducts a golf tournament once each year to raise money, which is then contributed to various charities supported by the foundation, such as Ronald McDonald House. Mr. Thorpe performs administrative work for the tournament and donates personal items for prizes. Mr. Thorpe has been involved as an administrator for four years, and has played in the tournament on two occasions. As an administrator, he helps to plan the tournaments, solicits donations, and solicits players to participate in the events. Mr. Thorpe has contributed prizes worth $10,000 to $12,000, and 2 days per year to the Foundation.

12. Birdies for the Brave.

Birdies for the Brave is one of many PGA Tour Charities. In this event, the PGA donates a certain amount of money for every birdie or eagle the professional golfer makes. The recipients are charities devoted to helping military personnel who have suffered physical disabilities, and the families of those who have died in the line of duty. Mr. Thorpe has played in this fundraiser for the last two years.

The letter under Tab 12 from Major General Minetti (Retired) and his co-directors relates to the event held in Tampa.

13. Special Olympics.

9

Mr. Thorpe has assisted Special Olympics since 2001. He was the honorary chairperson from 2001 through 2003. In each of those years he played in the tournaments and donated prizes worth about $12,000. Additionally, he spent approximately two weeks each year organizing the tournament.

14. Swing for Kids.

This tournament event, which takes place in Palm Beach Gardens, raises money to provide medical care for uninsured children. Mr. Thorpe is one of ten professionals who regularly participate in the fundraising tournament. Mr. Thorpe has participated in this one day event yearly for at least five years.

15. The First Tee.

The First Tee is a program designed to reach inner city youth and steer them away from crime and drugs. The First Tee teaches Nine Core Values: honesty, integrity, sportsmanship, respect, confidence, responsibility, perseverance, courtesy, and judgment.

Mr. Thorpe was one of the numerous professional golfers who addressed Congress at various events in an effort to secure seed money for this program. Mr. Thorpe's presentation occurred at a Congressional breakfast. The combined efforts of the professional golfers succeeded in securing from Congress a grant of $50,000,000. Mr. Thorpe has been an active participant in this program since its inception 11 years ago.

The highlight of the First Tee's activities each year is the Wal-Mart First Tee Champions Event, played every September in Pebble Beach, California. Mr. Thorpe has played in these events since the First Tee's inception. Young people play in the tournament with the professionals. There are qualifying events for the young people in each city. The qualifying system is based on education,

community service, and other criteria in addition to skill as a golfer.  Seventy-eight young people are chosen from these qualifying events to participate in the Wal-Mart event, each paired with a professional.  The young people play practice rounds with the professionals, during which Mr. Thorpe personally instructs some of them in golf techniques, and every one of the young people plays with his professional partner in the early rounds of the event.  The top 10 scoring young people also get to play on Sunday, the final day of the event.

The professionals compete for a purse at the Wal-Mart tournament, but this is the only First Tee event in which the professionals are compensated.  All other tournaments are fundraisers for the First Tee.  There are approximately 50 or more such fundraisers each year, and Mr. Thorpe participates in 8 or 10 of them each year.  At each, in addition to his participation as a golfer, Mr. Thorpe speaks to the young people about one of the nine core values the First Tee program seeks to instill in them.

16.  Project Action.

In 2004, Mr. Thorpe participated in a tournament to raise money for Project Action, a program that offers free transport and other services to senior citizens in Bermuda.  Mr. Thorpe participated in the golf tournament, which raised approximately $100,00, and further contributed by waiving an appearance fee of $35,000.

17.  100 Black Men

This organization provides a number of programs to benefit young minority people.  It offers mentoring programs, operates schools, helps provide access to health care and health information, and more.  Mr. Thorpe participates by delivering inspirational talks to young people.  He has given his time to this organization for five years.

18. The Harbor House Celebrity Invitational.

Mr. Thorpe has participated in this tournament for 10 years.  It raises money for underprivileged children and other causes.

19. The Montecristo Cup.

Montecristo Relief Organization raises money to help disaster victims in the Caribbean islands.  Participants play a three day golf event once a year, held at various clubs in the islands.  Mr. Thorpe has participated in this golf event for 10 years.  In the past, the Montecristo Relief Organization has paid Mr. Thorpe's expenses, but this last year, Mr. Thorpe paid his own expenses.

20. Allendale Tenant Council

Over the last 20 years, Mr. Thorpe has made some 10 or 12 contributions of cash to organizations that house poor elderly persons, including the Allendale Tenant Council of Baltimore, Maryland.

21. Commerce Bank Long Island Classic.

The bank sponsored a Champions Tour event to benefit Schneider Children's Hospital.  The players not only play at the tournament but talk to and interact with the children.  The pictures under tab 21 show Mr. Thorpe with children who were under treatment or recovering from treatment at the Children's Hospital.

<u>Additional Charitable Activities</u>

In addition to the activities evidenced in the notebook, Mr. Thorpe has contributed his time to fundraising golf tournaments for the American Junior Golf Association.  Mr. Thorpe participated in this one day event every year for almost 20 years, 1978 or 79 through 1996, for the benefit of American Junior Golf in western New York.  He conducted a clinic in the morning and played in the

tournament in the afternoon.

From the mid 1980's through the year 2000, Mr. Thorpe supported the United Negro College Fund by conducting an annual tournament in Buffalo, New York. He spent time organizing and administering the tournament, but the amount of time cannot be accurately estimated, because Mr. Thorpe was on the PGA Tour, and his activities had to be conducted during lulls in his playing schedule. He also spent two days each year playing in the tournament.

Each year from 1977 to 1996, Mr. Thorpe participated in the Jerry Ford Invitational, a two day event to raise money for charity.

Some players of the Champions Tour conduct tournaments to raise money to build homes in Honduras for orphaned children. A house will typically accommodate a house mother and eight to ten orphans. The group raises $100,000 to $150,000 each year, and Mr. Thorpe has participated in the tournaments for ten years.

The events and causes set forth above do not represent all of Mr. Thorpe's contributions to the community. His efforts reflect a commitment to help the underprivileged and those in need that has spanned 30 years and is continuing.

<u>Tax Liability</u>

Mr. Thorpe has a substantial tax liability. The ability to pay this liability is dependent upon Mr. Thorpe's continued participation in the PGA Champions Tour. The fact that Mr. Thorpe is 60 years of age precludes his ability to successfully return to professional golf from an extended period of incarceration. The reality is that if he is incarcerated, the chance of his returning to the Tour and realizing any earnings is slim to none. An extended absence from golf over as little as three months will mean the end of his professional golf career and his ability to earn the money necessary to pay

the back taxes, interest, and civil penalties.

In addition to his PGA winnings, Mr. Thorpe has had a longstanding contractual relationship with the Foxwoods Casino in Connecticut. The current contract with Foxwoods has expired, and Foxwoods is waiting to see if Mr. Thorpe will be available to fulfill commitments before entering into a new contract with him.

Mr. Thorpe also has a contractual relationship with Callaway Golf. Additionally, Mr. Thorpe does many one day appearances for which he is compensated. These contracts are dependent on Mr. Thorpe's status on the PGA Tour, and will be lost if he is incarcerated. If unable to continue his professional activities, Mr. Thorpe will be deprived of the source of funds from which he could make payments on his outstanding tax liability.

## V.     SENTENCE BELOW GUIDELINES

The guideline sentence is 24 months. The court has the authority to impose a sentence below the advisory Guidelines as long as there is no clear error of judgment in weighing the 3553(a) factors. *United States v. McBride*, *supra*.

Part F of the Presentence Investigation Report recognizes three factors that may warrant a sentence outside the guidelines range: that Mr. Thorpe is a 60 year old man who had never before been arrested; that Mr. Thorpe has a long history of significant community service; and that if not incarcerated, Mr. Thorpe will be able to repay his tax liability. Mr. Thorpe suggests that these factors suffice to warrant the imposition of a term of probation rather than incarceration.

As noted in the Presentence Investigation Report, Mr. Thorpe has, throughout his career, committed a significant amount of time, effort, and money to charitable ventures, including many programs designed to inspire and assist disadvantaged children. He also has a significant

14

outstanding tax debt.  He is approaching the end of his career as a professional athlete, which cannot survive a prison sentence.  His employment prospects outside of professional golf are extremely limited.  Both his ability to continue his charitable efforts, and, as noted in the Presentence Investigation report, his ability to make good the government's loss, will be substantially destroyed by a term of incarceration.

The court's duty is to impose a sentence sufficient but not greater than necessary to satisfy the factors in section 3553(a).  The guideline sentence of 24 months imprisonment exceeds what is necessary considering the facts of this case.  The interests of the defendant and the community, and the need to satisfy the tax obligation would best be served by imposition of a sentence involving minimal or no incarceration, and a period of supervised release or probation.

A sentence of probation, with its significant restrictions on Mr. Thorpe's personal liberty, will provide adequate deterrence for the crime.  In the alternative, a term of imprisonment or house arrest for one or two months, commencing on November 1, 2010, will represent an appropriate term of incarceration and still allow Mr. Thorpe to participate in the 2010 PGA Champions Tour.

In cases preceding *United States v. Booker*, 543 U.S. 220 (2005), the Circuit Courts have approved downward departures from the mandatory guidelines for charitable works or community service (notwithstanding the Sentencing Commission's determination that good works are not ordinarily relevant, USSG § 5H1.11) when those activities exist to an exceptional degree.  For example, in *United States v. Serafini*, 233 F.3d 758 (3d Cir. 2000), the district court concluded that the evidence demonstrated that the defendant had distinguished himself "not by the amount of money [he has] given, but by the amount of time that [he has] devoted."  233 F.3d at 775.

Those weren't acts of just giving money, they were acts of giving time, of giving

15

one's self. That distinguishes Mr. Serafini, I think, from the ordinary public servant, from the ordinary elected official, and I had ample testimony, today, that says that Mr. Serafini distinguishes himself, that these are acts not just undertaken to assure his re-election, but are taken because of the type of person he is....

*Id.*  The circuit court concluded that the district court had an adequate basis to depart from the sentencing guidelines.

Similarly, in *United States v. Cooper*, 394 F.3d 172 (3d Cir. 2005), a case decided the week before <u>Booker</u>, the evidence described the defendant's generosity not only with money, but with his time:

1.  For 27 years, he threw an annual Christmas party for underprivileged children, buying them gifts with his own money.

2.   He founded and funded an area athletic organization, Athletes Against Drugs and Violence, and provided equipment for the organization.

3.  He organized 2 youth football teams, and went into inner city Pittsburgh to offer kids the chance to participate, often driving them back and forth to the suburbs for practice.

4.  He donated his own money to enable 4 boys from one of the football teams to leave their inner city school and attend a better school in the suburbs, and donated money to help some of them through college.

5.  He extensively mentored one of the boys on the football team, invited the boy to his home and helped him with family and school problems.  This boy went on to graduate from college and attributed his success to defendant's intervention.

6.  He arranged for his company to make donations to several charities for two computer learning centers in depressed areas, to Special Olympics, and to the Pittsburgh Mercy Foundation,

and arranged for the company to sponsor a charity event to raise money

     7.  He helped advise the Mel Blount Youth Home.

*Cooper* said that whether good works are exceptional is evaluated with reference to the defendant's wealth and status in life.  Had the defendant's good works consisted only of financial donations, the appellate court would not have affirmed the downward departure.  394 F.3d at 177.  However, the district court had found the defendant's activities to be exceptional not only because of the amount of money he spent, but also the amount of personal time and effort he invested, and because his good works were a long-standing habit that began years before the criminal investigation was instituted.  His acts "are not the detached acts of charity one might ordinarily expect from a wealthy business executive.  They are, in a very real way, hands-on personal sacrifices, which have had a dramatic and positive impact on the lives of others."  394 F.3d at 177.

Now that *Booker* has rendered the guidelines advisory only, Sentencing Commission's disapproval of good works as a basis for lowering a defendant's sentence is of less force than formerly.  It is appropriate for this court to consider Mr. Thorpe's life-long commitment to helping others in fashioning a suitable sentence.  It is even more appropriate to consider such conduct in fashioning the least onerous sentence necessary to reflect the seriousness of the offense and provide just punishment.  In both *Serafini* and *Cooper*, the defendants committed positive acts of misconduct.  Serafini was a state legislator who was convicted of perjury for giving false testimony before a grand jury investigating violations of federal election laws.  He was sentenced to five months' imprisonment and five months' house arrest as a condition of supervised release.  Cooper, the CEO and CFO of a publicly traded corporation, was convicted of making a false tax return and of securities fraud.  He received a sentence of thirty-six months probation, including six months

17

house arrest.

Mr. Thorpe, by contrast, has not committed any affirmative act of dishonesty.  One of the primary goals of the Sentencing Guidelines is to reduce sentencing disparity and assure that similarly situated defendants will receive similar sentences for similar acts.  One of the effects of *Booker* is to restore to courts the discretion to impose lenient sentences in cases where the defendant's character and the nature of the offense make leniency appropriate.  Both considerations support the imposition of a term of probation rather than imprisonment in Mr. Thorpe's case.  His good works are similar to those of Serafini and Cooper, and his conduct was less blameworthy.  Mr. Thorpe has devoted significant time to helping others, in particular, disadvantaged children.  This has been a lifelong commitment, unmotivated by any sentencing consideration.  A sentence of probation will enable Mr. Thorpe to continue his good works and, as noted by the presentence investigation report, give him the opportunity to continue his remaining career as a professional golfer and earn money from which he can repay some or all of his tax liability.

WHEREFORE, Defendant JIMMIE L. THORPE respectfully requests that this court impose a sentence of five years probation, or in the alternative, one to two months incarceration commencing on November 1, 2010, followed by exceed two years supervised release.

Respectfully submitted,

**LAW OFFICES OF MARK L. HORWITZ**
**a Professional Association**

By:      /s/ Mark L. Horwitz
**MARK L. HORWITZ, ESQUIRE**
Florida Bar No. 147442
17 East Pine Street
Orlando, FL 32801
(407) 843-7733
Fax: (407) 849-1321
mark@mlhorwitzlaw.com

18

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court this 19th day of January, 2010, by using the CM/ECF system which will send a notice of electronic filing to Assistant United States Attorney I. Randall Gold at randy.gold@usdoj.gov.

 /s/ Mark L. Horwitz                                    
**MARK L. HORWITZ, ESQUIRE**