UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

Case No. 6:09-cr-14-Orl-19KRS

JIMMIE L. THORPE
   a/k/a Jim Thorpe

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, hereby files its Sentencing Memorandum, and in support thereof, states as follows:

1.    The sentencing of defendant Thorpe is set for January 22, 2010.

2.    According to the Pre-Sentence Report (PSR) and the plea agreement, defendant Thorpe failed to pay more than $2,000,000.00 in income taxes. His sentencing guidelines have been calculated to be thirty to thirty-seven months imprisonment; however, since the statutory maximum penalty is two years' imprisonment, the guideline imprisonment range is twenty-four months.

3.    Defendant Thorpe has requested that this Court deviate from the guidelines and impose a sentence of probation, or alternatively, one or two months imprisonment followed by two year supervised release based upon his charitable work for many years, his age, and his ability to make restitution if he remains employed. The United States submits that such a sentence would be unreasonable based upon the factors listed below, the large amount of income taxes he has failed to pay, the previous criminal investigation of defendant Thorpe's income taxes, and the fact that, in pleading guilty to two counts of Failure to File a Tax Return, faces substantially less time than if

he pled guilty to all seven charges. The United States requests that this Court impose the Guideline sentence of twenty-four months imprisonment.

## MEMORANDUM OF LAW

A.  Charitable Endeavors

As it relates to the Sentencing Guidelines, "[m]ilitary, civic, charitable, or public service; employment-related contributions; and similar prior good works are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.11 (policy statement). Under the Guidelines, departures for charitable work are recommended only when the good works are "exceptional." See U.S.S.G. Manual ch. 5, pt. H, introductory cmt. (departures based on discouraged factors should occur only "in exceptional cases"); see also United States v. Serafini, 233 F.3d 758, 775 (3d Cir.2000) (explaining that in order to be entitled to a downward departure for good works, a defendant's civic service, charity, and philanthropy must be "beyond the norm," *i.e.,* "exceptional," for a person with his or her resources and social status).

Beyond the Sentencing Guidelines, a defendant's charitable work and support in the community, like record of employment, may be considered under the rubric of § 3553(a)(1), which requires that a sentence imposed reflect "the history and characteristics of the defendant." Section 3553(a), however, also requires the district court to consider, among other things, the need for the sentence to promote respect for the law, to reflect the seriousness of the offense, and to provide just punishment. This Court must consider the need to avoid unwarranted sentencing disparities among similar defendants. 18 U.S.C. § 3553(a)(6). To reduce sentencing disparities, the

Guidelines sought to ensure more tax evaders were sentenced to prison, specifically focusing on those who evaded more than $100,000.00 in federal taxes." United States v. Ture, 450 F.3d 352, 358-59 (8th Cir. 2006).

There is a dearth of cases in the Eleventh Circuit which deals with the issue of a defendant's charitable endeavors.  Other circuit courts, however, have addressed this issue with some frequency.  While defendant Thorpe accurately states that some circuit courts, pre-Booker, have granted downward departures based upon charitable activities, the United States submits that this is neither a case in which this Court should depart under the guidelines or grant a variance pursuant to 18 U.S.C. § 3553(a).

"Tax offenses, in and of themselves, are serious offenses, and a greater tax loss is obviously more harmful to the treasury and more serious than a smaller one." United States v. Carlson, 498 F.3d 761, 764 (8th Cir. 2007), quoting United States v. Ture, 450 F.3d 352 (8th Cir. 2006).  "Criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system and criminal tax prosecutions serve to punish the violator and promote respect for the tax laws."  Id.  See also, United States v. Engle, --- F.3d —, 2010 WL 114944, *5 (4th Cir. Jan. 13, 2010) (discussing the view that the Sentencing "Commission's focus on incarceration" in a tax case "as a means of third party deterrence is wise").

In Ture, the Eighth Circuit found that imposing a sentence of two years' probation and 300 hours of community service, which amounted to a 100% downward variance from the guidelines range and a five-level reduction in the defendant's total offense level, was unreasonable and remanded the case to the district court for re-sentencing. Ture, 450 F.3d at 358.

In <u>Carlson</u>, the defendant evaded $561,223.76 in income tax. In sentencing Carlson to five years of probation, 1,000 hours of community service, and eight months of home confinement, the Eighth Circuit concluded that "the district court failed to adequately consider the seriousness of Carlson's offense, the goal of promoting respect for our federal tax laws, and the need for a just sentence when formulating Carlson's sentence." 498 F.3d at 764-765. The case was reversed and remanded to the district court for re-sentencing.

It is clear that defendant Thorpe, a professional golfer, has engaged in a number of charitable activities. The United States submits that his charitable endeavors, while commendable, do not qualify as extraordinary in this case. More is expected of "high-level business executives" who enjoy "sufficient income and community status so that they have the opportunities to engage in charitable and benevolent activities." <u>United States v. Haversat</u>, 22 F.3d 790, 796 (8th Cir.1994). Indeed, "it is usual and ordinary, in the prosecution of similar white-collar crimes involving high-ranking corporate executives ... to find that a defendant was involved as a leader in community charities, civic organizations, and church efforts." <u>United States v. Kohlbach</u>, 38 F.3d 832, 838 (6th Cir.1994). <u>See also, United States v. Cooper</u>, 394 F.3d 172, 176-77 (3d Cir. 2005); <u>United States v. Repking</u>, 467 F.3d 1091, 1095-96 (7th Cir. 2006). As a professional golfer, defendant Thorpe is such an individual and his charitable endeavors are not extraordinary.

The United States further submits that defendant Thorpe's position implicates a serious policy concern: individuals who donate large sums or time because they can should not gain an advantage over those who do not make such donations because

they cannot. To impose a sentence of probation in this case would, in effect, violate that policy concern. The rhetorical question becomes whether this Court would impose a sentence of probation for a defendant without defendant Thorpe's money and without the ability to be involved in charitable endeavors.

Defendant Thorpe's request for a probationary sentence would amount to a one hundred percent variance, which was specifically rejected by the Carlson court. 498 F.3d 765. Courts have suggested that a "variance to zero prison time where the Sentencing Commission has found that substantial prison time is indicated ... requires extraordinary justification,' " United States v. Soperla, 494 F.3d 752, 755 (8th Cir.2007) (quoting United States v. McDonald, 461 F.3d 948, 957 n. 7 (8th Cir.2006)), and "have routinely rejected this kind of variance as unreasonable." Id. at 755.

As the Court stated in Carlson:

The district court's 100 % variance additionally demonstrates a failure to accord significant weight to the need for sentences to deter future criminal conduct. See 18 U.S.C. § 3553(a)(2) (2000). Terms of imprisonment are important "to deter others from stealing from the national purse." Ture, 450 F.3d at 358.
...

Although the district court noted that "[i]t is highly unlikely that Carlson will ever commit another crime," it did not address the sentence's effect of deterring others - an important consideration. See United States v. Miller, 484 F.3d 964, 967-68 (8th Cir.2007) ("[G]eneral deterrence ... is one of the key purposes of sentencing ...." (quotations omitted)). Because of the district court's failure to address the deterrence of others, the importance placed on imposing terms of imprisonment to deter future tax evaders, and the fact that Carlson received no term of imprisonment, we conclude that the district court failed to give the goal of deterrence adequate weight when formulating its sentence.

The United States submits that neither a downward departure nor a variance be granted due to his charitable endeavors.

B.    Lack of Criminal History

USSG § 4A1.3 forbids relying on lack of criminal history in granting a downward departure where, as here, the defendant is already classified as criminal history category I because "[a] departure below the lower limit of the applicable guideline range for Criminal History Category I is prohibited." Id.  The PSR and the plea agreement set forth defendant Thorpe's previous history of failure to comply with the tax laws.  He was previously investigated by specials agents of the Internal Revenue Service for failure to do exactly what he has done in this case:  failure to file income tax returns and failure to pay income taxes.  While that investigation was closed without an indictment (the defendant blamed his accountants in that situation), defendant Thorpe should have been more diligent than the average taxpayer in filing his tax returns and paying his taxes.  He obviously did not learn his lesson from that investigation and is not entitled to a second break.

C.    Employment and the Opportunity to Make Restitution

In a very recent case, the Fourth Circuit has a thoughtful and interesting discussion of the issue of incarceration versus restitution in Engle, 2010 WL 114944, in which it outlines why restitution in a tax case should not pre-empt punishment at sentencing.

Frederick Engle pleaded guilty to tax evasion and the district court sentenced him to four years' probation, conditioned on the service of eighteen months' home detention with work release and international travel privileges.  The government appealed, challenging the reasonableness of the sentence.

In Engle, the defendant was charged with evading taxes of more than $600,000.00. The defendant argued that his tax problems were an issue of poor "money management." While the United States sought a term of imprisonment within the guideline range, the Court ultimately sentenced Engle to four years' probation with partial restitution, finding it to be a "money management" issue and decided not to "take away his livelihood, which will destroy the ability of the government to collect the money.[1] Id. at *3. The Fourth Circuit concluded that the sentence imposed was substantively unreasonable because of the district court's improper focus on Engle's financial ability to pay restitution. The Fourth Circuit found that the trial court abused its discretion and vacated Engle's sentence and remanded the case for further proceedings before a different district court judge. Id. at *9.

Some of the Engle language is particularly instructive here:

The district court made it clear that, but for Engle's earning capacity, it would have imposed a within-Guidelines sentence of imprisonment: "[A]bsent the apparent ability to generate the income, I would simply impose a Guideline sentence and be done with it." J.A. 31e. In fact, other statements suggested that the district court believed not simply that Engle's payment of his tax debt was desirable, but that it was improper for the government to seek anything other than restitution. See J.A. 60 (asking the government whether the government wanted "blood or money"); J.A. 63 ("I'm concerned that I'm not hearing any effort to try to balance this out other than let's put him in jail and take away his livelihood, which will destroy the ability of the government to collect the money. I don't see how that necessarily promotes respect for the law.").

Reduced to its essence, the district court's approach means that rich tax-evaders will avoid prison, but poor tax-evaders will almost certainly go to jail. Such an approach, where prison or probation depends on the defendant's economic status, is impermissible. That was the consistent view of courts before Booker

---

[1] There was an original sentencing which was vacated by the district court due to the refusal of the Bureau of Prison to allow the defendant to travel internationally to earn money to make restitution. Id. at * 1-2.

and its progeny.  See, e.g., United States v. DeMonte, 25 F.3d 343, 347 (6th Cir.1994) ("[W]e may not sentence a poor convict more harshly than a rich convict simply because the rich convict is better able to make restitution."); United States v. Bolden, 889 F.2d 1336, 1340 (4th Cir.1989) ("[W]e do not think that the economic desirability of attempting to preserve [the defendant's] job so as to enable him to make restitution warrants a downward adjustment from the guidelines."); cf. U.S.S.G. § 5H1.10, p.s. (forbidding consideration of defendant's socio-economic status as a basis for departure).

The United States submits that if defendant Thorpe is sentenced to anything other than a guidelines sentence in this case due to his ability to earn money and make restitution, this Court will be sending the exact wrong message that was at the heart of Engle's criticism.  With all of the money defendant Thorpe has made over the last several years, he failed to pay over $2,000,000.00 in income taxes when he could have done so; there is no guarantee that he will do so if not incarcerated.  The United States requests that this court not grant a downward departure or a variance based upon restitution possibilities.

Wherefore, for all of the above-mentioned reasons, the United States submits that defendant Thorpe should receive a sentence of twenty-four months' imprisonment.

    Respectfully submitted,

    A. BRIAN ALBRITTON
    United States Attorney

By:   *s/ I. Randall Gold*
    Assistant United States Attorney
    Deputy Chief, Orlando Division
    Florida Bar Number 0268062
    501 West Church Street, Suite 300
    Orlando, Florida  32805
    Telephone:  (407) 648-7500
    Facsimile:  (407) 648-7643
    E-mail:  randy.gold@usdoj.gov

**U.S. v. JIMMIE L. THORPE**                                   Case No. 6:09-cr-14-Orl-19KRS

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

    Mark L. Horwitz, counsel for Defendant

                                               *s/ I. Randall Gold*
                                               Assistant United States Attorney
                                               Deputy Chief, Orlando Division
                                               Florida Bar Number 0268062
                                               501 West Church Street, Suite 300
                                               Orlando, Florida  32805
                                               Telephone:   (407) 648-7500
                                               Facsimile:   (407) 648-7643
                                               E-mail:        randy.gold@usdoj.gov